## Thompson *et al. v.* Adams *et al.*

One surety has an unquestionable right to stipulate for a separate indemnity for himself, and to apply that indemnity in extinguishment of his portion of his liability.

An indemnity taken by one surety can be reached by his co-sureties only where it was taken in fraud of them, or was taken for their joint benefit.

Although the rule at *law* is, that a release by the obligee of one of two persons jointly bound, is a release of both, yet *equity* will not give a release to operate beyond the intention of the parties and the justice of the case.

On the 25th day of March, 1837, William C. Kenny, of Holmes county, Mississippi, purchased of Warren Adams and Robert P. Jackson, of the state of Alabama, who were then partners, several slaves, for the sum of four thousand three hundred dollars—to secure the payment of which, William C. Kenny, John M. Brown, David Thompson and John W. Bratton made two promissory notes, one for the sum of two thousand and ninety-three dollars, payable to the Planters' Bank three months after date, and the other for the sum of two thousand one hundred and seventy-three dollars, payable to the Commercial Bank of Manchester, twelve months after date. When the notes fell due, William C. Kenny, who was the principal in said notes, failed to pay them. Suit was then instituted on the notes, in the names of the respective banks to which they were made payable, for the use of Warren Adams, one of the partners from whom the slaves were purchased; and judgment was obtained against all the parties to the notes, in October, 1838. Executions issued on these judgments respectively, and forthcoming bonds were executed according to the statute of this state, which were forfeited, and execution issued on the forfeiture of the bonds against all the parties to the same. Before these last executions were satisfied, William C. Kenny, the principal debtor in the said notes, delivered to John M. Brown, one of the sureties on said notes, several promissory notes made by John D. Wyatt and payable to L. S. Wade, amounting to the sum of

thirty-one hundred and sixty-five dollars, for the purpose of securing the said Brown against his liability as one of the makers of said promissory notes.

On the 13th of July, 1839, Warren Adams, the usee in the said executions, received from Brown the said promissory notes delivered to him by Kenny, agreeing to credit each execution with the sum of seven hundred and fifty dollars, and released said Brown and John F. Crawford, one of the sureties on the forthcoming bonds, from their liability to pay said executions. After this release, the plaintiff levied his executions on a house and lot of John W. Bratton, one of the sureties who had not been released. The complainants then filed this bill in chancery, charging that the release of Brown and Crawford operated in law as a release of all the parties, and praying for an injunction to restrain the sheriff from selling the house and lot so levied on. An injunction was granted by a judge of the circuit court, on the 26th of July, 1839, and at the December term, 1839, of this court, the defendants filed their general demurrer to the bill.

FITCH for the demurrer.

I insist upon the above state of facts, which are admitted by the demurrer, that the complainants are not entitled to relief. The first charge in the bill, after stating the bonding of the executions by Brown, Bratton and Thompson, who were joint drawers of the notes with Kenny, is, that Kenny placed in the hands of Brown the notes on Wyatt, for the purpose of indemnifying and securing him (Brown) from his liability on account of said notes and bonds. Now, I insist that Kenny had a right to secure Brown against his liability in any way that he could, either by the payment of money or of goods, or the transfer of securities, or in any other way. The case would have been entirely different if the bill had charged that the notes of Wyatt had been placed in Brown's hands for the purpose of being appropriated to the payment and discharge of the judgments, and that Adams, with a knowledge of the facts, had combined with Brown, and had appropriated them in discharge of Brown alone; but the bill expressly negatives any such inference; it expressly states that Kenny gave the notes to Brown to secure him alone. The bill does not even charge that Adams

Thompson *et al. v.* Adams *et al.*

had notice that Brown had obtained the notes from Kenny; nor is there any thing in the bill that shows that Adams had any knowledge how or in what way Brown obtained said notes. A debtor may lawfully prefer one creditor to another. Wilkes and Fountain *v.* Ferris, sheriff, 5 John. R. 335.

The bill goes on and charges that Brown agreed with Adams to let him have Wyatt's notes for the sum of fifteen hundred dollars, and that the two judgments were to be credited with the sum of seven hundred and fifty dollars, each, and that in consideration thereof Adams released Brown and Crawford, who was the security of Brown on the forthcoming bonds; and the release is made a part of the bill, by reference to which it will be seen that Wyatt held an agreement by which he was at liberty to pay two negro women in discharge of said notes, and that the amount fifteen hundred dollars that Adams gave for Wyatt's notes was a full and fair consideration for them, and in fact more than the value of the two women. The bill makes no charge that the notes were worth more than the sum of fifteen hundred dollars, and from the exhibit, which is made a part of the bill, it is clear that that was their full value.

The exhibit further shows that Brown, Bratton and Fisher, in giving the forthcoming bonds, were considered each as giving their own security, and that Crawford was considered as the separate security of Brown, therefore Brown was under obligation to protect him from any loss. Each of the parties were bound for the payment of one third of the judgments, and the fifteen hundred dollars, and the fifteen hundred dollars amounted to the one third of both judgments. This transaction can be viewed in no other light than as a payment by Brown of his portion of the debt. It was the evident intention of parties at the time, and the court will so construe it. 2 John. Rep. Harrison *v.* Close & Wilcox, 449, and authorities there cited.

But it will be contended that this instrument operates a release, and that a release of one joint debtor is a release of all. That position is true in some cases, but I contend that the receipt given in this case does not amount to a release. A judgment or debt of record can only be released by matter of as high a nature. This instrument is but a mere receipt, and can be regarded as nothing

more. It is not even under seal. On this point see Tomlin's Law Dictionary, 324; Coke Lit. 264, b; 1 Roll Rep. 43; 2 Leon 76, 213; 2 Roll Abr. 408; 2 Sand. Rep. 48; Moor 573, 787. See the opinion of the court in Seymour *v.* Minturn, 17 John. Rep. 174; Jackson *v.* Stackhouse, 1 Cowen 122.

WILLIAM YERGER, *contra.*

We contend that the demurrer should be overruled, because by the rules of equity,

1. Where one surety receives indemnity from the principal, he takes it for the benefit of all, and each has a right to it. 2 Wharton's Dig. 533, tit. B. sec. 17; Agnew *v.* Bell, 4 Watts' R. 33.

2. Where two are jointly bound in a bond, a release of one is a release of the other. Lord Raymond's R. 420.

3. It is contended that this is not a release. We admit that it is not such an instrument as could have been pleaded at law as a release; but it is an agreement made upon good consideration, to discharge one of two joint debtors, and although Kenny could not have pleaded it at law, yet in equity it would have availed him, and he could prevent Adams attempting to enforce the claim against him. See 2 Swanston, 539; Hankstraw *v.* Perkins, Theobald on Principal and Surety, 115, in 1 volume of Law Library 68.

This being the case, as Adams has disabled himself from proceeding against Brown directly, he has also disabled himself from proceeding against complainants; because, if he should make his money out of complainants, they could immediately proceed against Brown, which would thus enable Adams to do that by means of complainants, indirectly, which he could not do directly, which would be in bad faith to Brown. Theobald P. and S. 181.

The CHANCELLOR.

One surety has an unquestionable right to stipulate for a separate indemnity to himself, and to apply that indemnity in extinguishment of his portion of his liability; and an indemnity taken by one surety can be reached by his co-sureties only where it

was taken in *fraud* of them, or was taken for their joint benefit. 4 Hawk. 358.

The note here being applied in part extinguishment of the liability of the complainants, they certainly have no right to complain. This is not a strict, technical release, but even if it were, although the rule at law is, that a release by the obligee of one of two persons jointly bound, is a release of both, yet equity will not give a release to operate beyond the intention of the parties, and the justice of the case. Gill & John. 314; 6 John. Ch. Rep. 242.

This rule seems to be sustained by Pothier on Obligations, who lays it down that a release by a creditor of one of several joint debtors, would release the others, if the creditor meant thereby to extinguish the debt, but not if the creditor meant to reserve his rights against the other co-debtors for their proportion.

But I apprehend that the release to Brown in this case cannot prejudice any rights to contribution which the complainant may have against him for any excess paid by them over and above their proportion of the debt. If this position be true, it would seem to follow that a release or discharge of one of several sureties would not operate as a discharge of them all. In 6 Ves. 805, Lord Eldon held that a discharge of one surety did not discharge the other sureties, and that as each surety was bound to contribute his share towards the general payment, no one could recover over against another who had been discharged, unless for the excess paid by him beyond his due proportion. The creditor might, therefore, as was done in this case, accept a composition from one surety, and still proceed against another to recover his full proportion of the original debt, without deducting the composition paid, if it did not exceed the proportion for which such surety was originally bound. I am aware that Mr. Theobald, in his treatise upon Principal and Surety, questions the accuracy of this decision, and supposes it to have been misreported; but Judge Story, 1 vol. 478, in a note to his treatise on Equity, remarks that he sees no reason to question either the accuracy of the report or the soundness of the doctrine; and in that remark I fully concur.

There are three sureties in this case. The notes amounted

originally to four thousand one hundred dollars. Brown paid one thousand five hundred dollars at the time of his discharge, which it would seem was about his proportion of the principal and interest due up to that time, and this is all the complainants would have a right to hold him liable for, under any circumstances.

The demurrer must be sustained, and the bill dismissed.