## ROYAL CALL *vs.* JOHN BUTTRICK.

A. conveyed a lot of land to B., who at the same time mortgaged it back; B. quitclaimed to C., who made a sealed lease to D. and E., and their assigns, of the right and privilege of digging a well in the land and of conducting water therefrom to their houses; about the same time, A., after entry for foreclosure, but before foreclosing his mortgage, undertook to confirm the lease by an instrument under seal, but not acknowledged, and afterwards quitclaimed the land to C. and F., with a covenant against all claiming under him or his heirs; C. afterwards conveyed all his interest in the land to D., who had meanwhile also become the owner of E.'s house: It was held, that D. had sufficient title in the well to enable him to maintain an action on the case for a corruption of the water therein by means of a cess pool sunk in the ground near by, no plea in abatement having been filed to the nonjoinder of E. or of F.; and that it was immaterial whether B. had released his equity of redemption to A. before A. confirmed the lease.

A deed of real estate, though not acknowledged, is good against the grantor, his heirs and devisees.

An action on the case for a nuisance is not abated or barred by a subsequent abatement of the nuisance by the plaintiff.

THIS was an action of trespass upon the case, commenced on the 22d of May, 1847, in which the plaintiff alleged that he was, and for ten years before action brought had been, the owner of a well of water in Lowell, and had the right to take the water from the well, in its natural purity; but that the defendant had injuriously dug a deep hole in the ground near the well, and conducted into the hole great quantities of filthy water, &c., which penetrated and flowed from the hole through the earth into the well, and rendered the water of the well unfit for use.

The trial was before *Fletcher*, J., who made the following report thereof: —

The plaintiff introduced evidence, showing that Sidney Spaulding and five others, on the 28th of April, 1832, made a deed of the land in which the well in question was sunk

to Peter E. Sanborn, who, on the same day, mortgaged the land to the grantors, to secure part of the purchase money; that Spaulding took possession of the land on the 9th of May, 1833, for condition broken, and for the purpose of fore-closure  and that on the 5th of August, 1833, the five other mortgagees assigned all their interest in the mortgage to Spaulding; that Sanborn, the mortgagor, on the 2d of June, 1832, made a quitclaim deed of part of the land to Avery Marshall, which deed contained a condition that Marshall should appropriate the land for a street, so long as he should own the adjoining land on the south, with his brothers; that Avery Marshall and Luther Marshall, on the 28th of July, 1835, by a sealed instrument, leased and demised to the plaintiff and Solomon Phelps, and their executors, administrators and as-signs forever, " the right and privilege of digging a good and sufficient well of water on the easterly side of our land, on the south side of a street called Middlesex street, being the lot conveyed to said Avery by Peter E. Sanborn, and to con-duct the water from the same through said land, in the most convenient course, to accommodate said lessees' houses lately erected on the bank of Pawtucket canal."

It appeared that all the foregoing conveyances, except the last, were recorded soon after they were executed; but that the last (the lease) was not recorded until May 16th, 1840. At the foot of this lease was the following memorandum : " I, Sidney Spaulding, of said Lowell, mortgagee of said premises, do hereby consent to said lease, and do release to said Call and Phelps the privilege above granted.  Sidney Spaulding. (seal.") This memorandum was recorded with the lease, though it was not acknowledged by Spaulding be-fore a magistrate, until August 17th, 1847; and on the next day it was again recorded.

It was in evidence that the land, in which the well was sunk, was a part of Grand street, which was first laid out by public authority in the year 1846 ; but that it had been used as a street for many years previously.

The following facts also appeared in evidence : On the 5th of May, 1836, Sidney Spaulding made a quitclaim deed

o 'Luther Marshall, Avery Marshall and Hezekiah Marshall, )f the land in which the well was, " for the purpose of a street; the premises forever to be kept open as a street;" and covenanted against the claims of his heirs, and all persons claiming from or under him or them. This deed was recorded on the 7th of March, 1840. On the 20th of May, 1847, (two days before this action was commenced,) Avery Marshall conveyed to the plaintiff all said Avery's right and title to all that part of Grand street, laid out between Middlesex and Marshall streets; reserving to said Avery, and to his heirs and assigns, " the right to dig and use one or more wells on said premises, in such place or places as not to injure any wells which said Call has dug or may dig thereon ; this conveyance being made upon the express conditions, that said premises shall be forever kept open as a public street, and that said Call, his heirs and assigns, shall never sell a right to any other person to dig a well thereon." On the 23d of August, 1847, (three months after this action was commenced,) Hezekiah Marshall made to the plaintiff a deed like the one last mentioned. Both these deeds were recorded on the next day after they were dated. On the 12th of January, 1837, Solomon Phelps conveyed to the plaintiff, in mortgage, his house and estate on Pawtucket canal, " with all the privileges and appurtenances thereunto belonging." And the plaintiff introduced evidence that he took possession of said house and estate, for the purpose of foreclosure, on the 5th of August, 1837, and had ever since had exclusive possession thereof.

Evidence was also given, that in October, 1846, the defendant and Josiah N. Short and Joseph Woodbury made a sewer and the cesspool complained of in the plaintiff's declaration, in Grand street, near the well claimed by the plaintiff, opposite to, and on the side of, said street, next to the house and land of the defendant, and between Middlesex and Marshall streets. The defendant (then denying that the plaintiff had any sufficient title to the well) put in a deed from Sidney Spaulding to the defendant and Short and Woodbury dated August 5th, 1847, and recorded on the

next day, and a deed from Spaulding to Woodbury, dated November 1st, 1847, and recorded on the 4th of November; which two deeds conveyed the entire lot of land in which the well was sunk, but not the cesspool nor sewer. The plaintiff contended that these deeds were incompetent evidence, in any stage of the trial, inasmuch as they were executed since the commencement of this action.

It was conceded, for the purposes of the trial, that said well was dug in the year 1835, and had been in constant use by the plaintiff and his tenants, until about seven months after the cesspool was finished; and that the cesspool was filled up by the plaintiff, on the 29th of June, 1847; also, that the defendant and Short and Woodbury, before the 5th of August, 1847, had seen and obtained a copy of the above-described memorandum of Spaulding, at the foot of the lease aforesaid.

The judge, in order to obtain a decision of the whole court upon the sufficiency of the plaintiff's title, advised a nonsuit, which was entered. If, upon the foregoing facts, and upon examination of all the said deeds and instruments, the court shall be of opinion that the plaintiff had no sufficient title to the well when this action was commenced, the nonsuit is to stand; otherwise it is to be taken off, and the case is to stand for trial.

*G. F. Farley* and *S. Ames*, for the plaintiff.

*B. F. Butler*, for the defendant, cited to the point that Luther and Hezekiah Marshall should have been joined as plaintiffs, and, that this being a personal action, their non-joinder might be pleaded in bar, *May* v. *Parker*, 12 Pick. 34; *Gilmore* v. *Wilbur*, 12 Pick. 120; as to the necessity of the acknowledgment of Spaulding's memorandum of confirmation, *Carter* v. *Champion*, 8 Conn. 549; *Blood* v. *Blood*, 23 Pick. 80, 82; and as to the abatement of the suit by filling up the cesspool, 16 Vin. Ab. Nusance, X., and cases there cited; 3 Bl. Com. 220.

The opinion of the court was delivered at the October term, 1851.

METCALF, J. The state of the plaintiff's title to the well

and to the use of the water in it, when he commenced his action, is shortly this: Sidney Spaulding and others owned the land on the 28th of May, 1832, and then conveyed it to Peter E. Sanborn, who, at the same time, mortgaged it back to them. On the 2d of June following, Sanborn gave a quitclaim deed of that part of the mortgaged land, in which the well is, to Avery Marshall, who, together with Luther Marshall, on the 28th of July, 1835, made a sealed lease to the plaintiff and Solomon Phelps, and their assigns, of the right and privilege of digging a well in the land, and of conducting the water thereof to their houses on Pawtucket canal. About the same time, (as we understand,) Spaulding, who had become assignee of his co-mortgagees, undertook to confirm the lease aforesaid, by an instrument signed and sealed by him, but not acknowledged until after this action was brought; and on the 5th of May, 1836, he made a quitclaim deed to Luther, Avery and Hezekiah Marshall, of the lot of land in which the well was, and covenanted against all claims that any persons might make to the quitclaimed premises through or under him or his heirs. On the 20th of May, 1847, (two days before this action was brought,) Avery Marshall conveyed to the plaintiff all said Avery's right and title to the land aforesaid. The plaintiff, as early as the year 1840, became the sole owner of Solomon Phelps's house and estate on Pawtucket canal, (to which the aforesaid lease gave liberty to convey water from the well,) with all the privileges and appurtenances belonging thereto. The plaintiff and his tenants also had the uninterrupted use of the well and the water in it, from the year 1835 until near the time when this action was commenced. And it does not appear that the defendant, before this action was commenced, had any title or claim to the land.

Upon examining these facts and conveyances, we are of opinion, that the plaintiff had a sufficient title to the well, when this action was commenced. He had a lease and grant from Sanborn, who had previously mortgaged the land, and a confirmation of that lease and grant, by Spaulding, the holder of the mortgage; thus acquiring a title from the

only parties who appear to have had any power to confer title.

It was objected, that this deed of confirmation by Spaulding was invalid, because it was not acknowledged by him before this action was brought. . But, as against Spaulding, and his heirs and devisees, it conveyed a title, although it was not acknowledged. *Dole* v. *Thurlow*, 12 Met. 157.

If, however, this deed of confirmation were not valid, there is another ground upon which we are of opinion that the plaintiff's title, at the commencement of his action, was sufficient. Spaulding conveyed and released the land to the three Marshalls, and Avery Marshall afterwards conveyed all his right and title to the plaintiff. It does not appear whether Spaulding had an indefeasible title, when he conveyed to the Marshalls. That conveyance was four days before the expiration of three years from the time of Spaulding's entry for foreclosure. The mortgage, therefore, was not then foreclosed. And whether he had obtained a release of Sanborn's equity of redemption, we do not learn from the report of the evidence. Nor is it material. For as Sanborn had granted to the plaintiff the right to dig and use the well, neither he nor his heirs or assigns could have defeated that grant, even if the mortgage had been redeemed after Spaulding's conveyance to the Marshalls. And if Spaulding, after that conveyance, foreclosed the mortgage, the foreclosure enured to the benefit of the Marshalls and their assigns.

It was contended for the defendant, that if the plaintiff's title was derived solely from Avery Marshall's conveyance to him, this action must fail, because Luther and Hezekiah Marshall should have joined as plaintiffs; and that if the plaintiff's title was sufficient under Sanborn's conveyance, and Spaulding's confirmation thereof, then Solomon Phelps should have joined in bringing this action. But if it were certain that the plaintiff is tenant in common of the well, the nonjoinder of his co-tenants could be excepted to only by plea in abatement, though he would be entitled to recover damages only *pro interesse suo.* 1 Saund. 291, *g, h. Addison* v. *Overend*, 6 T. R. 770. Whether the plaintiff has

acquired Phelps's right to the use of the well, is a question on which the evidence given at the trial does not enable us to form an opinion.

It was also objected against the maintenance of this action, that the plaintiff has filled up the defendant's cesspool, since the commencement of the action; and it was urged, that an abatement of a nuisance by a plaintiff, after suit brought to recover damages for levying it, abates the suit, or is a bar to it. The authorities cited in support of this position relate to the processes of assize of nuisance, and *quod permittat prosternere.* And in those processes, while they were in use in England, the law was so. But it is otherwise in actions on the case to recover damages for a nuisance. *Kendrick* v. *Bartland,* 2 Mod. 253, and 1 Freem. 230; *Pierce* v. *Dart,* 7 Cow. 609; *Gleason* v. *Gary,* 4 Connect. 418; *Tate* v. *Parrish,* 7 T. B. Monr. 327.

Without considering the effect of the deeds which bear date since this action was brought, we are satisfied that the other deeds show such a title as authorized the plaintiff to bring the action. The nonsuit is, therefore, to be taken off and the case is to stand for trial.